LAW OFFICES OF STEVEN ROOD
Steven Rood (Cal. Bar No. 69332)
E-mail: steve@steverood.com
405 – 14th Street, Ste. 212
Oakland, CA 94612
Telephone: 510-839-0900
Facsimile: 510-839-0230

ISAACSON &WILSON, P.S.
Mark J. Wilson (Cal. Bar No. 96985)
Email: mjwilson@isaacsonwilson.com
1200 5th Avenue, Ste. 1900
Seattle, WA 98101
Telephone: 206-448-1011
Facsimile: 206-448-1022

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# RIVERSIDE COURTHOUSE

| | |
|---|---|
| E. ERIC JOHNSON, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>BAYERISCHE HYPO-UND VEREINSBANK, AG, et al.<br><br>Defendants. | Case No.: No. CV-11-05431-VAP (MANx)<br><br>**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**<br><br>Date: September 12, 2011<br>Time: 2:00 pm<br>Ctrm: 2<br>Judge: Hon. Virginia A. Phillips |

## TABLE OF CONTENTS

I.   ARGUMENT .................................................................................................... 1

   1. Statement of Facts ....................................................................................... 1

i
Reply Memorandum in Support of Plaintiff's Motion for Leave to File Amended Complaint
Case No. CV-11-05431-VAP (MANx)

2. HVB committed fraud and breached its fiduciary duty to Plaintiffs by concealing its agreement with Presidio to eliminate the premium loan through the interest rate swap. .................................................................. 2

   a. Breach of fiduciary duty is adequately pled. ............................... 2

   b. Fraud is adequately pled. .............................................................. 3

3. The PAC adequately pleads grounds to rescind the Settlement Agreement.... 4

   a. At the time of the Settlement Agreement, Plaintiffs did not know or suspect that HVB had committed fraud and breach of fiduciary duty............. 6

   b. HVB concealed its agreement with Presidio to do an interest rate swap and concealed that the swap eliminated the loan premium............................. 7

# TABLE OF AUTHORITIES

**Cases**

*Casey v. Proctor*, 59 Cal. 2d 97, 103 (Cal. 1963). ........................................................5

*Chung v. Johnston* 128 Cal.App.2d 157, 163 (Cal. App. 1954). ...............................5

*Gajanich v. Gregory*, 116 Cal App 622 (Cal. App. 1931). .........................................5

*Leboce, S.A. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 709 F.2d 605, 607 (9th Cir. 1983), ..........................................................................................................2,4

*Lerner v. Fleet Bank, N.A.* 459 F.3d 273 (2d Cir. 2006)............................................2

*M. G. Chamberlain & Co. v. Simpson*, 173 Cal.App.2d 263, 276......................5

*Mairo v. Yellow Cab Co.*, supra, 208 Cal. 350 ..........................................................5

*Meyer v. Haas*, supra, 126 Cal. 560.............................................................................5

*Nielson v. Union Bank of California*, 290 F. Supp. 2d 1101 (C.D. Cal. 2003). ........2

*O'Meara v. Haiden* 204 Cal. 354, 357-361 (1928); ...................................................5

*Palmquist v. Mercer* 43 Cal 2d 92 (1954). .................................................................5

*Raynale v. Yellow Cab Co.*, 115 Cal.App. 90 ............................................................5

*Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 84 (2d Cir. 1999). Restatement (Second) of Torts § 551(2)(b)(1976), ..................................................................4

**Statutes**

Cal. Civ. Code § 1572 ................................................................................................3,4

Cal. Civ. Code § 1573 ...................................................................................................3

Civ. Code, § 1542.) .......................................................................................................5

# I. ARGUMENT

## 1. Statement of Facts

In October 1999, Plaintiffs entered into a Credit Agreement with HVB. PAC, ¶ 14. Under Sections 1.01 and 2.01 of Plaintiffs' respective Credit Agreements, HVB agreed to provide structured loans to Plaintiffs consisting of a combined total principal amount of $48,300,000 and a combined total premium amount of $29,000,000 for a combined total amount of $77,300,000. (Proposed Amended Complaint ("PAC"), ¶ 16; PAC, Ex. D).

The gravamen of Plaintiffs' Amended Complaint for rescission of the 2006 Settlement Agreement between Plaintiffs and HVB (PAC, Ex. A to Ex. 1), is that at the time Plaintiffs entered into the Credit Agreement and at the time Plaintiffs settled their claims against HVB, they did not know or suspect that the purported two part structured loan (consisting of a premium amount and a principal amount) did not exist for the reason that HVB and Presidio entered into a secret agreement before HVB made any loans in connection with BLIPS. According to this secret agreement, HVB would and did enter into an interest rate swap after each BLIPS loan, which swap was made retroactive to the beginning of the loan term. The interest rate swap had the effect of eliminating the premium loan. HVB secretly intended all along to enter into an interest rate swap, retroactive to the beginning of the loan term, which eliminated the premium loan. HVB furthered concealed the fact that the loan premiums did not actually exist by making false and/or misleading entries in Plaintiffs' account statements. Consequently, Plaintiffs allege that the Credit Agreement and related sub-agreements are void for fraud in the execution. Plaintiffs' assent to the Settlement Agreement was obtained through the ongoing fraudulent concealment

by HVB that it charged for a loan premium which never actually existed. (PAC, ¶¶ 16, 20, 23, 25-31, 54, 78, 84-86, 89-98 ).

### 2. HVB committed fraud and breached its fiduciary duty to Plaintiffs by concealing its agreement with Presidio to eliminate the premium loan through the interest rate swap.

#### a. Breach of fiduciary duty is adequately pled.

Plaintiffs deposited $2,030,000 in a discretionary account under HVB's control. (PAC, ¶ 66). California law imposes a fiduciary duty on someone who "for all practical purposes" controls another's account, as did HVB in the case of Plaintiffs' account at HVB. *Leboce, S.A. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 709 F.2d 605, 607 (9th Cir. 1983). (PAC, ¶¶ 14, 20, 23, 41, 66). The fiduciary duty is "limited to the scope of the agency set forth in the parties' agreement" and it "is a fiduciary [only] with respect to matters within the scope of the agency." *Nielson v. Union Bank of California,* 290 F. Supp. 2d 1101 (C.D. Cal. 2003).

In this case the scope of HVB's agency and fiduciary duty is specified in the HVB Credit Agreement, whereby HVB agreed to provide loans to Plaintiffs for a combined total amount of $77,300,000, consisting of a combined total principal amount of $48,300,000 and a combined total premium amount of $29,000,000.  (PAC, ¶¶ 16, 66, 68, 71, 76; PAC, Ex. D). HVB owed a fiduciary duty to Plaintiffs to disclose its agreement with Presidio to eliminate the premium loan through the interest rate swap. (PAC, ¶¶ 14, 16, 66-71).  HVB breached its fiduciary duty to Plaintiffs by fraudulently concealing the fact of its agreement with Presidio and of the interest rate swap. (PAC, ¶¶ 67-73, 76-78).

In *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 288 (2nd Cir. 2006), the Second Circuit stated that a bank may be liable for participating in a diversion by

having knowledge that a diversion is intended or being executed. HVB entered into a conspiratorial agreement to participate in the diversion or misappropriation of Plaintiffs' assets held on deposit at HVB. (PAC, ¶¶ 20-24).

**b. Fraud is adequately pled.**

The PAC adequately states a claim of fraud against HVB, both as to the original Credit Agreement and in the subsequent Settlement Agreement. (PAC, ¶¶ 14-37, 54-62, 76-78, 82-87).

Under Cal. Civ. Code § 1572 "[a]ctual fraud...consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: (1) [t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true...(3) [t]he suppression of that which is true, by one having knowledge or belief of the fact; (4) [a] promise made without any intention of performing it; or, (5) [a]ny other act fitted to deceive.

Under Cal. Civ. Code § 1573, "[c]onstructive fraud consists (1) [i]n any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him; or, (2) [i]n any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud."

Rule 9(b) of the Federal Rules of Civil Procedure governs pleading in fraud actions generally, providing that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Pleading fraud with particularity requires the plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain

why the statements were fraudulent." *Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 84 (2d Cir. 1999). Restatement (Second) of Torts § 551(2)(b)(1976), comment g explains that liability for fraud may be based either on the original misleading statement or on the nondisclosure of the additional facts required to prevent misleading the recipient of the statement.

The allegations in the PAC satisfy the elements as to actual fraud under Civ.C. § 1572, constructive fraud under Civ. C. § 1573 and the particularity requirements of Rule 9(b). (PAC, ¶¶ 14-17, 20-24, 25-37, 38-40, 49-62, 76-79, 82-86, 89, 92-95, 100-102).

**3. The PAC adequately pleads grounds to rescind the Settlement Agreement.**

Plaintiffs did not know or suspect HVB's fraud in April 2005 when they sued KPMG, Sidley Austin, Presidio and HVB or when they entered into the Settlement Agreement in March 2006. (PAC, ¶¶ 54-62; PAC, Ex. A). It was not until after September 2010, after Plaintiffs had signed the Settlement Agreement with HVB, for which Plaintiffs received no monetary consideration, that Plaintiffs learned for the first time that HVB had charged their account $1,403,600 for a loan premium which did not exist. (PAC, ¶¶ 55).

Despite Plaintiffs' exercise of reasonable due diligence, they did not discover and could not have discovered the fact of HVB's fraud and breach of fiduciary duty until after September 2010, when they learned that the HVB loan premium did not exist for the first time from their legal counsel, who discovered it from the trial testimony in the criminal case of *U.S. v. Stein* and from the Non-Prosecution Agreement entered into by Deutsche Bank on December 10, 2010. (PAC ¶ 25-48).

"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." (Civ. Code, § 1542.) (See *O'Meara v. Haiden,* 204 Cal. 354, 357-361 (1928); *Chung v. Johnston,* 128 Cal.App.2d 157, 163 (Cal. App. 1954). As with other contracts, assent to a release is not real and free when obtained through fraud, and the release may be avoided if the facts are sufficient to bring the case within the provisions of the Civil Code defining fraud. (22 Cal.Jur. 758, § 8.) *Chung v. Johnston*, 128 Cal. App. 2d 157, 163 (Cal. App. 1954).

It has often been held that if the releaser was under a misapprehension, not due to his own neglect, as to the nature or scope of the release, and if this misapprehension was induced by the misconduct of the releasee, then the release, regardless of how comprehensively worded, is binding only to the extent actually intended by the releaser. (*Raynale v. Yellow Cab Co.*, 115 Cal.App. 90 (fraud); *Meyer v. Haas, supra,* 126 Cal. 560 (misrepresentation as to the contents of the release); *Mairo v. Yellow Cab Co., supra*, 208 Cal. 350 (same); *M. G. Chamberlain & Co. v. Simpson,* 173 Cal.App.2d 263, 276 (deception) *Casey v. Proctor*, 59 Cal. 2d 97, 103 (Cal. 1963). Failure to disclose material facts affecting essence of release agreement may constitute actual fraud vitiating contract. *Palmquist v. Mercer* 43 Cal 2d 92 (1954).

Where execution of a release is obtained through fraud, or where through some trick or deception a person signs a paper other than that which he intended to sign, avoidance of the release is within the jurisdiction of a court of law because the validity of the instrument is in question. *Gajanich v. Gregory*, 116 Cal App 622 (Cal. App. 1931).

### a. At the time of the Settlement Agreement, Plaintiffs did not know or suspect that HVB had committed fraud and breach of fiduciary duty.

Plaintiffs filed a complaint in April 2005 ("2005 Complaint") against KPMG, Sidley Austin, Presidio and HVB. (Ziemianek Decl., Ex. A). It is obvious from the allegations in the complaint that Plaintiffs did not know or suspect HVB's fraud and breach of fiduciary duty.

The gravamen of the 2005 Complaint is that there was no reasonable basis for KPMG or Sidley Austin to represent to Plaintiffs that a deduction taken for losses generated by BLIPS would be upheld if challenged by the IRS. (PAC, ¶ 50; Ziemianek Decl., Ex. A at ¶ 1). Nothing in the 2005 Complaint suggest that Plaintiffs knew or suspected that the HVB loan was fraudulent. In fact, it is clear from the allegations in the 2005 Complaint that Plaintiffs believed at that time that HVB had provided the loan in connection with BLIPS. (Ziemianek Decl., Ex. A at ¶¶ 18, 118 and 127).

The only causes of action alleged by Plaintiffs against HVB in their 2005 Complaint were (1) for "conspiracy to commit fraud" in that the alleged conspirators agreed that "HVB would provide the loan that was necessary to create the tax loss;" and (2) for "aiding and abetting fraud" in that "HVB aided and abetted KPMG in defrauding plaintiffs" in that "HVB agreed to participate and actively assisted KPMG's scheme by providing the loan to Plaintiffs that was necessary to create the tax loss." (PAC, ¶ 51; Ziemianek Decl., Ex. A at ¶¶ 118 and 127.

### b. HVB concealed its agreement with Presidio to do an interest rate swap and concealed that the swap eliminated the loan premium.

#### i. The Senate Report on the Tax Shelter Industry did not put Plaintiffs on notice of HVB's fraud.

HVB argues in its Memorandum in Opposition to the Motion for Leave to Amend, at p. 6, that the U.S. Senate Investigation Report, which was publicly released in November of 2003, put Plaintiffs on notice of "exactly" how the tax shelter worked, including the HVB loan and the interest rate swap. (HVB's Memo in Opp., at p. 6-7, citing to the Senate Report, Ziemianek Decl., Ex. B, pp. 10 and 120-121). What HVB fails to point out in its argument, however, is that the Senate Report, in describing the "Swap" does not discuss the <u>effect</u> of the interest rate swap on the premium loan, which is to eliminate the loan premium entirely. (Ziemianek Decl., Ex. B, p. 121). All the Senate Report says about the effect of the swap is that it reduces "the 'loan' interest rate to a market-based rate." *Id.*

It was not until Makov's testimony, which Plaintiffs did not learn of until after September 2010, and the Deutsche Bank NPA, which was not until December 2010, that it was revealed that the effect of the interest rate swap on the loan premium loan was to eliminate the loan premium entirely and it destroyed the basis for the tax benefits sought by the customers. (PAC, ¶¶ 26, 29-35).

#### ii. The HVB Deferred Prosecution Agreement did not put Plaintiffs on notice of HVB's fraud.

---

7
Reply Memorandum in Support of Plaintiff's Motion for Leave to File Amended Complaint
Case No. CV-11-05431-VAP (MANx)

HVB argues that the Deferred Prosecution Agreement (the "HVB NPA") entered into with U.S. Department of Justice in February 2006 put Plaintiffs on notice of HVB's fraud. (HVB's Memo in Opp., at p. 7-8). The PAC, on the other hand, alleges that the HVB NPA was self-serving, ambiguous and misleading and did not put Plaintiffs on notice of HVB's fraud. (PAC,¶¶ 26-29, 36, 37, 77, 82, 84). In many respects, the HVB used its NPA to continue to conceal HVB's fraud by misstating and obscuring the facts, in violation of California's Civil Code §§ 1572 and 1573. Plaintiffs did not and, in the exercise of reasonable due diligence could not discover HVB's fraud until they learned of the testimony of Makov in *US v. Stein* and the Deutsche Bank NPA. (PAC,¶¶ 26-29, 36-37, 77, 82-84).

A portion of the HVB NPA is quoted in the PAC at ¶ 27. This portion of the HVB NPA is misleading and inaccurate and fails to put Plaintiffs on notice of HVB's fraudulent conduct. HVB represents in the quoted portion of its NPA that it was Plaintiffs (i.e., the "clients") who entered into the interest rate swap, when, in fact, the swap was pursuant to a secret agreement between HVB and Presidio. (PAC,¶ 27). The HVB NPA also states that the swap "generated the purported premium" and that the "net effect of the swaps…was that the clients would pay only a market rate of interest on the full amount of the loaned funds (principal and purported premium)." *Id.* Therefore, HVB's DPA suggests that the interest rate swap was devised to help Plaintiffs and further their tax strategy.

The truth is, as Makov testified in *US v. Stein* and as Deutsche Bank ("DB") stated in its NPA, the swap was part of the original agreement between DB and Presidio, agreed to before the first BLIPS transaction began. (PAC, ¶¶ 30-33). Contrary to HVB's false and misleading NPA, DB admitted in its NPA that it entered into a side agreement with Presidio, but not the customer, to enter into a swap which would cancel the premium before the first transaction began and that

8

Reply Memorandum in Support of Plaintiff's Motion for Leave to File Amended Complaint
Case No. CV-11-05431-VAP (MANx)

DB knew that the premium structure was necessary for the loans to enter into the tax benefits sought by the customer. (PAC, ¶ 35). Deutsche Bank admits sufficient facts to enable its customers to allege a fraud claim that Deutsche Bank charged fees for a loan premium which did not exist during the 60 day period of the loan. (PAC ¶ 35).

HVB should not be permitted to argue that its own NPA, which is misleading, inaccurate and ambiguous, put Plaintiffs on notice of the secret agreement between HVB and Presidio to enter into the interest rate swap, the net effect of which was to eliminate the loan premium and the tax advantage sought by its customers, including Plaintiffs.

In fact, Makov testified in US v. Stein, that it was the banks, including DB and HVB—not the customer—who insisted on entering into the interest rate swaps in order to eliminate their interest rate exposure. See excerpts of trial testimony of Makov, attached to Declaration of Mark J. Wilson, dated August 29, 2011, Ex. 1, pp. 3064-3075.

None of the other facts or litigation referred to by Defendant HVB in its Opposition to Plainiffs' motion for leave to amend warrants denial of Plaintiffs' motion. In further reply in support of their motion for leave to amend, Plaintiffs refer to and incorporate herein their Memorandum in Opposition to HVB's Motion to Dismiss. (Dkt. 18).

Dated: August 29, 2011

Seattle, WA

/s/ Mark J. Wilson
Mark J. Wilson
Cal. Bar No. 96985
ISAACSON & WILSON, P.S
1200 Fifth Avenue, Suite 1900
Seattle, WA 98101
Telephone: (206) 448-1011
Facsimile: (206) 448-1022
Email: mjwilson@isaacsonwilson.com
*Attorneys for Plaintiffs*